IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID G. CLIFF, | CASE NO. 1:13-cv-02985-GBC |
| Plaintiff, | (MAGISTRATE JUDGE COHN) |
| v. | |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | MEMORANDUM |
| Defendant. | Docs. 1, 5, 6, 7, 8 |

## **MEMORANDUM**

### I. Procedural Background

On December 11, 2010, Plaintiff filed an application for disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"). (Tr. 101-05). On March 9, 2011, the Bureau of Disability Determination denied this application (Tr. 67-74), and Plaintiff filed a request for a hearing on April 29, 2011. (Tr. 89-90). On February 23, 2012, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 48-66). On April 20, 2012, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 19-32). On May 4, 2012, Plaintiff filed a request for review with the Appeals Council (Tr. 17-18), which the Appeals denied on June 13, 2013, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 5-9).

On December 13, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On March 7, 2014, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 5, 6). On April 4, 2014, Plaintiff filed a brief in support of his appeal ("Pl. Brief"). (Doc. 7). On May 7, 2014, Defendant filed a brief in response ("Def. Brief"). (Doc. 8). On July 3, 2014, the parties consented to transfer of this case to the undersigned for adjudication. (Doc. 12). The matter is now ripe for review.

## II. Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In other words, substantial evidence requires "more than a mere scintilla" but is "less than a preponderance." *Jesurum v. Sec'y*

of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### III. Sequential Evaluation Process

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. *See* 20 C.F.R. § 404.1520. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2)

whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

## IV. Relevant Facts in the Record

Plaintiff was born on May 12, 1965, and was classified by the Regulations as a younger individual through the date of the ALJ decision. (Tr. 31). 20 C.F.R. § 404.1563. Plaintiff has at least at least a high school education and past relevant work as a regulator mechanic. (Tr. 31).

## A. Function Report and Testimony

Plaintiff submitted a Function Report in connection with her application for disability benefits. (Tr. 153-60). He reported that he does not prepare his own meals due to dizziness and forgetfulness. (Tr. 166). He reported that he needed reminders to take care of personal needs, grooming, and take medicine because he is "often" forgetful. (Tr. 166). He indicated that he goes outside daily, can go out alone "at times," and can drive. (Tr. 167). He reported that his wife helps him shop and handle money. (Tr. 167). He indicated that his hobbies were watching television and puzzles, but he was no longer "as good with puzzles" since his impairments began. (Tr. 168). He reported that he does not spend time with others. (Tr. 168). He indicated problems with lifting, squatting, standing, reaching, walking, memory, completing tasks, concentrating, and understanding due to his stroke. (Tr. 169).  He reported that he does not finish what he starts. (Tr. 169). He indicated that he gets along with other and handles stress and changes in routine "ok." (Tr. 169).

On February 23, 2012, Plaintiff appeared and testified before the ALJ. (Tr. 50). Plaintiff testified that he was not able to work because he was "off-balance" and tired. (Tr. 54). He explained that his balance problems were due to a stroke. (Tr. 55). He explained that his dizziness caused problems walking and his medications contributed to his fatigue. (Tr. 56). He reported problems with

concentration since his stroke, and indicated that he could only "sometimes" watch an entire movie. (Tr. 58). He testified that he does some household chores and walks his dog, but only with breaks due to fatigue. (Tr. 60-61). He testified that he sometimes loses his balance while walking his dog. (Tr. 60). He reported that he naps every day for one hour to a couple of hours. (Tr. 61).

### B. Medical Records

On May 23, 2010, Plaintiff went to the emergency room with complaints of dizziness, and was diagnosed with acute dizziness, nausea, and vomiting, and released with a prescription for Phenergen (Tr. 310-29). The next day, Plaintiff was admitted to Community Medical Center with complaints of dizziness and headache, and a brain MRI revealed evidence of an acute small left cerebellar infarct and an old tiny microinfarct in the right basal ganglia. Upon discharge, Plaintiff was diagnosed with severe dizziness secondary to cerebellar infarct, old microinfarct, hypertension, hyperlipidemia, mild reactive hyperglycemia, mild carotid plaque with no stenosis, and mild left ventricular hypertrophy on echocardiogram, and improved with treatment (Tr. 259-300).

Plaintiff continued following-up with the hospital neurologist, Dr. Vithal Dhaduk, M.D., every three months for his stroke. (Tr. 339-43, 420-21). Dr. Dhaduk noted improvement, and indicated that Plaintiff could work "as tolerated." *Id.* In January of 2011, Dr. Dhaduk completed a Stroke Impairment Questionnaire,

opining that Plaintiff could stand/walk for an hour or less and would be absent from work more than three times per month (Tr. 358-63).

Plaintiff also followed-up with his primary care physician, Lisa Robertson, D.O., about every three months. (Tr. 213-20). Plaintiff reported memory problems and dizziness, but had intact memory and normal gait on examination. (Tr. 213-220, 392-414). In December of 2010, she opined that Plaintiff could not perform any lifting, postural maneuvers, head and neck movements, sitting, standing, or walking, and noting that Plaintiff needed to be absent from work due to a disability beginning on May 24, 2010 for an indeterminate amount of time (Tr. 330-34). In April 2011, Dr. Robertson completed a Multiple Impairment Questionnaire, opining that Plaintiff could not lift or carry any weight, could only sit and stand/walk an hour or less each in an eight-hour day, and would be absent more than three times per month. (Tr. 383-90).

In January 2011, John Kuna, Psy.D., indicated that he was treating Plaintiff twice per month for depression and alcohol abuse, and opined that Plaintiff had moderate and marked limitations in work related mental activities, with an inability to tolerate even low-stress work, and would be absent from work more than three times per month. (Tr. 350-57). The ALJ did not obtain medical records from Dr. Kuna.

On September 26, 2011, Plaintiff followed-up with Dr. Dhaduk. (Tr. 424-25). He reported "doing fairly well, but still feels off balance at times." (Tr. 424). Plaintiff had "developed some changes in mood and behavior. He gets easily upset over trivial things." (Tr. 424). On examination, Plaintiff had "very subtle impairment of cognitive functions. Facial asymmetry on the right side. He has mildly flat affect. Nystagmus is present toward the left…. Generalized weakness is present. Mild ataxia is present on the left. Patient cannot tandem walk." (Tr. 424). Dr. Dhaduk recommended Plaintiff perform "light to medium duty work if can find it." (Tr. 424). In December of 2011, Dr. Dhaduk made the same recommendation. (Tr. 427).

### C. ALJ Findings

On April 20, 2012, the ALJ issued the decision. (Tr. 24). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 23, 2010, the alleged onset date. (Tr. 24). At step two, the ALJ found that Plaintiff's status-post cerebral vascular accident was medically determinable and severe. (Tr. 24). At step three, the ALJ found that Plaintiff did not meet or equal a Listing. (Tr. 26). The ALJ found that Plaintiff had the RFC to:

> [L]ift and carry 20 pounds occasionally and 10 pounds frequently. The claimant has no limitations in sitting, but is limited to standing and walking two hours in a normal work day. The claimant should not be asked to do any climbing. The claimant should not be exposed to unprotected heights or to dangerous machinery. He is limited to

>  simple, repetitive tasks and low stress work, defined as not involving a fast-paced production environment.

(Tr. 26). A step four, the ALJ found that Plaintiff could not perform past relevant work. (Tr. 31). At step five, in accordance with VE testimony, the ALJ found that Plaintiff could perform other work in the national economy. (Tr. 31). Consequently, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 32).

## V. Plaintiff Allegations of Error

### A. The ALJ's RFC assessment

Plaintiff asserts that the ALJ erred in finding that he could walk for up to two hours and would not be absent more than three times per month. All of Plaintiff's treating physicians opined that he could not walk more than one hour in the day and would be absent from work more than three times per month. The ALJ did not obtain a contradictory medical opinion from a reviewing or consulting opinion. Defendant responds that the ALJ was entitled to review the medical evidence and assess an RFC that was greater than that assessed by all of the medical experts.

Generally, an ALJ may not reject all of the medical opinions in the record and assess an RFC that is greater than found by the medical professionals. As Courts in this District have repeatedly emphasized:

> The Court recognizes that the residual functional capacity assessment must be based on a consideration of all the evidence in the record, including the testimony of the claimant regarding her activities of daily living, medical records, lay evidence and evidence of pain. *See Burnett v. Commissioner of Social Sec. Admin.,* 220 F.3d 112, 121–122 (3d Cir.2000). However, rarely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant. *See Doak v. Heckler,* 790 F.2d 26, 29 (3d Cir.1986) ("No physician suggested that the activity Doak could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence."); 20 C.F.R. § 404.1545(a).

*Gormont v. Astrue*, 3:11-CV-02145, 2013 WL 791455, at *7 (M.D. Pa. Mar. 4, 2013) (Nealon, J.); *see also Bloomer v. Colvin*, 3:13-CV-00862, 2014 WL 4105272, at *5 (M.D. Pa. Aug. 19, 2014) (Jones, J.); *House v. Colvin*, 3:12-CV-02358, 2014 WL 3866072, at *8 (M.D. Pa. Aug. 6, 2014) (Kane, J.); *Muhaw v. Colvin*, CIV.A. 3:12-2214, 2014 WL 3743345, at *15 (M.D. Pa. July 30, 2014) (Mannion, J.). *Maellaro v. Colvin*, 3:12-CV-01560, 2014 WL 2770717, at *11 (M.D. Pa. June 18, 2014) (Mariani, J.); *Arnold v. Colvin*, 3:12-CV-02417, 2014 WL 940205, at *4 (M.D. Pa. Mar. 11, 2014) (Brann, J.); *Kaumans v. Astrue*, 3:11-CV-01404, 2012 WL 5864436, at *12 (M.D. Pa. Nov. 19, 2012) (Caputo, J.); *Troshak v. Astrue*, 4:11-CV-00872, 2012 WL 4472024, at *7-8 (M.D. Pa. Sept. 26, 2012) (Munley, J.); *Shedden v. Astrue*, 4:10-CV-2515, 2012 WL 760632, at *11 (M.D. Pa. Mar. 7, 2012) (Rambo, J.); *Duvall-Duncan v. Colvin*, 1:14-CV-17, 2015 WL 1201397, at *11 (M.D. Pa. Mar. 16, 2015) (Conner, C.J.); *McKean v. Colvin*,

1:13-CV-2585, 2015 WL 1201388, at *8 (M.D. Pa. Mar. 16, 2015) (Conner, C.J.); *Hawk v. Colvin*, 1:14-CV-337, 2015 WL 1198087, at *12 (M.D. Pa. Mar. 16, 2015) (Conner, C.J.).

As Judge Mariani explains in *Maellaro v. Colvin*, 3:12-CV-01560, 2014 WL 2770717, at *11 (M.D. Pa. June 18, 2014):

> The ALJ's decision to reject the opinions of Maellaro's treating physicians created a further issue; the ALJ was forced to reach a residual functional capacity determination without the benefit of any medical opinion.
> …
> The ALJ's decision to discredit, at least partially, every residual functional capacity assessment proffered by medical experts left her without a single medical opinion to rely upon. For example, three physicians opined that Maellaro was limited in some way in his ability to stand and/or walk: Dr. Dittman opined that Maellaro could stand/walk for less than one hour, Dr. Singh believed that Maellaro could stand/walk for fewer than two hours, and Dr. Dawson opined that Maellaro could not stand or walk for any length of time. Tr. 183, 211, 223. In rejecting these three opinions, there were no other medical opinions upon which the ALJ could base her decision that Maellaro essentially had no limitations in his ability to stand or walk. Tr. 283. Consequently, the ALJ's decision to reject the opinions of Drs. Singh and Dawson, and the ALJ's determination of Maellaro's residual functional capacity, cannot be said to be supported by substantial evidence.

*Maellaro v. Colvin*, 3:12-CV-01560, 2014 WL 2770717, at *11 (M.D. Pa. June 18, 2014); *see also* Bloomer v. Colvin, 3:13-CV-00862, 2014 WL 4105272, at *6 (M.D. Pa. Aug. 19, 2014) (Jones, J.); ("The ALJ did not cite to a single medical opinion that contradicted [the treating source] opinion; thus, the ALJ improperly set his "own expertise against that of a physician who present[ed] competent

medical evidence.' Consequently, the AJL's residual functional capacity determination is not supported by substantial evidence.") (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (2d Cir.1999)).

An ALJ must weigh medical opinions in making an RFC assessment. The social security regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it is to be given controlling weight. 20 C.F.R. § 416.927(d)(2). Section 404.1527(c) establishes the factors to be considered by the ALJ when the opinion of a treating physician is not given controlling weight. Under subsections (c)(1) and (c)(2), the opinions of treating physicians are given greater weight than opinions of non-treating physicians and opinions of examining physicians are given greater weight than opinions of non-examining physicians, as discussed above. Section 404.1527(c)(2) also differentiates among treating relationships based on the length of the treating relationship and the nature and extent of the treating relationship. Subsection 404.1527(c)(3) provides more weight to opinions that are well supported, which means that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."

Subsection 404.1527(c)(4) states that "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." Subsection 404.1527(c)(5) provides more weight to specialists, and subsection 404.1527(c)(6) allows consideration of other factors which "tend to support or contradict the opinion."

In *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000), the Third Circuit set forth the standard for evaluating the opinion of a treating physician, stating that:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer [v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999)] (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones,* 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster*, 786 F.2d at 585. The ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer,* 186 F.3d at 429 (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. See *Adorno*, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Kent*, 710 F.2d at 115.

*Id.* at 317-318. An ALJ may not reject a treating physician opinion based on an independent review of objective medical evidence. The Third Circuit has explained:

> By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence. Again, if the ALJ believed that Dr. Scott's reports were conclusory or unclear, it was incumbent upon the ALJ to secure additional evidence from another physician.

*Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

Here, the ALJ did not rely on any medical opinion that supported the RFC assessment. *Supra.* Three treating physicians submitted opinions that Plaintiff had work-preclusive limitations. *Supra.* Because the ALJ relied on his own review of the medical evidence to reject these opinions, the ALJ engaged in impermissible independent review of medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985). Here, "it was incumbent upon the ALJ to secure additional evidence from another physician." *Id.* Thus, the ALJ's independent review does not provide his assignment of weight to the medical opinions or RFC assessment with substantial evidence. As the Third Circuit has explained:

> [O]ur decisions make clear that determination of the existence vel non of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by counterveiling evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of

evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.

*Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). Here, the treating physician opinions overwhelm the ALJ's independent review. *Id.* The ALJ's assessment of an RFC in excess of all of the medical opinions lacks substantial evidence. *Doak v. Heckler,* 790 F.2d 26, 29 (3d Cir.1986). The Court remands for the ALJ to properly evaluate the assignment of weight to the medical opinions and Plaintiff's RFC. Because the Court recommends remand on these grounds, the Court declines to address Plaintiff's other allegations of error.

## VII.   Conclusion

The Court finds that the ALJ's decision lacks substantial evidence because the ALJ failed to properly evaluate the treating opinions. Pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is vacated, and this case is remanded for further proceedings.

An appropriate Order in accordance with this Memorandum will follow.

Dated: March 31, 2015            *s/Gerald B. Cohn*
                                    GERALD B. COHN
                         UNITED STATES MAGISTRATE JUDGE